Eastern District of Kentucky
F I L E D

DEC 17 2008

AT PIKEVILLE
LESLIE G. WHITMER
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE DIVISION

CIVIL ACTION NO. 7:08-CV-228-ART

ARMESIA THOMAS                                              PLAINTIFF

VS.                        **COMPLAINT**

GENERAL MOTORS CORPORATION
C/O Statutory Agent
C T Corporation System
4169 Westport Rd.
Louisville, KY 40207

and

TAKATA CORPORATION
C/O Shigehisa Takada (Corporate Officer)
No. 25. Mori Building 4-30
Roppongi 1-chome, Minato-ku
Toyko, Japan 106-8510

and

TK HOLDINGS, INC.
C/O Statutory Agent
CSC- Lawyers Incorporated Service Co.
421 West Main St.
Frankfurt, KY 40601

and

HIGHLAND INDUSTRIES, INC.
C/O Statutory Agent
CT Corporation System
150 Fayettville St., Box 1011
Raleigh, N.C. 27601

and

TAKATA, INC.
C/O Timothy Healy (Corporate Officer)
2500 Takata Dr.
Auburn Hills, MI 48326

and

TAKATA SEAT BELTS, INC.
C/O Timothy Healy (Corporate Officer)
2500 Takata Drive
Auburn Hills, MI 48362

and

TAKATA RESTRAINT SYSTEMS, Inc.
C/O Timothy Healy (Corporate Officer)
2500 Takata Drive
Auburn Hills, MI 48362

and

IRVIN AUTOMOTIVE PRODUCTS, INC.
C/O Statutory Agent
The Prentice Hall Corp. System Inc.
601 Abbot Road
East Lansing, MI 48823

and

JOHN DOE DEALERSHIP
(Name and address unknown
And undiscoverable) **DEFENDANTS**

*****************

The above named plaintiff, ARMESIA THOMAS, (hereinafter "MS. THOMAS") by and through her undersigned counsel, for a Complaint against the above named defendants, alleges that upon information and belief and that all relevant times:

## PARTIES AND JURISDICTION

1. Plaintiff, MS. THOMAS, is twenty years old and a citizen and resident of Plymouth, Ohio.

2. Defendant GENERAL MOTORS CORPORATION (hereinafter referred to as "GM") is a foreign corporation, incorporated under the laws of Delaware with its principal place of business in Michigan. GM is authorized to and conducts business within the Commonwealth of Kentucky, and its agent for Service of Process is CT Corporation System, 4169 Westport Rd., Louisville, KY 40207.

3. Defendant Takata Corporation is a foreign corporation incorporated under the laws of Japan with its principal place of business is in Tokyo, Japan; it conducts business throughout the United States including the Commonwealth of Kentucky and is subject to service under Federal Rule of Procedure 4(f).

4. Defendant TK Holdings, Inc. is a foreign corporation incorporated under the laws of Delaware with its principal place of business in North Carolina; it is authorized and conducts business in the Commonwealth of Kentucky, and its agent for Service of Process is CSC- Lawyers Incorporated Service Co., 421 West Main St., Frankfurt, KY 40601; it is a wholly owned subsidiary of Takata Corporation.

5. Defendant Highland Industries, Inc. is a foreign corporation incorporated under the laws of Delaware with its principal place of business in the state of North Carolina; it conducts business throughout the United States including the Commonwealth of Kentucky; its Statutory Agent for service of process is CT Corporation, 150 Fayettville St., Box 1011, Raleigh, N.C. 27601; it is a wholly owned subsidiary of Takata Corporation.

6. Defendant Takata Inc. is a foreign corporation incorporated under the alws of Delaware with its principal place is located in the state of Michigan; it conducts business throughout the United States including the Commonwealth of Kentucky; its agent for Service of Process is Timothy Healy (Corporate Officer), 2500 Takata Drive, Auburn Hills, MI 48362; it is a wholly owned subsidiary of Takata Corporation.

7. Defendant Takata Inc. is a foreign corporation incorporated under the laws of Delaware with its principal place is located in the state of Michigan; it conducts business throughout the United States including the Commonwealth of Kentucky; its agent for Service of Process is Timothy Healy (Corporate Officer), 2500 Takata Drive, Auburn Hills, MI 48362; it is a wholly owned subsidiary of Takata Corporation.

8. Defendant Takata Restraint Systems Inc. is a foreign corporation incorporated under the laws of Delaware with its principal place is located in the state of Michigan; it conducts business throughout the United States including the Commonwealth of Kentucky; its agent for Service of Process is Timothy Healy (Corporate Officer), 2500 Takata Drive, Auburn Hills, MI 48362; it is a wholly owned subsidiary of Takata Corporation.

9. Defendant Irvin Automotive Products, Inc. is a foreign corporation incorporated under the laws of with its principal place in the state of Michigan; it conducts business throughout the United States including the Commonwealth of Kentucky; its agent for Service of Process is The Prentice Hall Corp. System Inc., 601 Abbot Road East Lansing, MI 48823; it is a wholly owned subsidiary of Takata Corporation.

10. Takata Corporation is the parent corporation, and/or operates its business activity in the United States by and through, and/or controls the business activity of,

Defendants TK Holdings, Inc., Takata Seat Belts Inc., Takata Inc., Takata Restraint Systems, Highland Industries Inc., and Irvin Automotive Products, Inc. (hereinafter all Takata entities are collectively referred to as "TAKATA").

11. John Doe Dealership is a dealership that sold, repaired, or otherwise refitted or provided maintenance to the 2000 Pontiac Grand Am SE1 VIN: 1G2NF52T7YC515469 (hereinafter referred to as " the PONTIAC"). The name and address of Defendant John Doe Dealership is unknown and undiscoverable.

12. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332, because the amount in controversy exceeds $75,000.00, exclusive of interest and costs and there is diversity amongst the parties.

13. Venue is proper in this Court because the product at issue, i.e., the PONTIAC, caused and enhanced the Plaintiff's injuries in Floyd County, Kentucky.

## GENERAL ALLEGATIONS APPLICABLE
## TO ALL CAUSES OF ACTION

14. Defendants GM and TAKATA independently and jointly engaged in the business of researching, designing, testing (laboratory and dynamic sled), manufacturing, producing, assembling, inspecting, distributing, marketing, installing, labeling, promoting, packaging, developing standards, advertising, selling, and otherwise placing automobiles and the "restraint systems" into the stream of commerce including the PONTIAC.

15. An automotive "restraint system" is a complex system that incorporates many different aspects of the car in an effort to make the car crashworthy. The "restraint system" in the PONTIAC includes but is not limited to the seat structure, cushion, padding, configuration, contour and material composition; the location of the seat belt

anchorage points and belt geometry; the buckle stalk; the buckle; buckle/ retractor pretensioners (or lack thereof); load limiters (or lack thereof); back rest; side structure; seat pan or metal ramp (reaction ramp) under the seat cushion (or lack thereof); the interior and floor dimensions (foot space) for the occupant; airbags; the floor pan; the crumple zone; the belt webbing; and any warnings. The components of the "restraint system" each serve a specific role but also work together to optimize the system for the respective vehicle and reasonably protect the passenger in foreseeable crash sequences.

16. A "lap belt" is designed to fit across the pelvis and must remain on the pelvis during accident sequences to protect and properly restrain the occupant.

17. The "restraint system" must be designed in a manner to reduce the risk of the lap belt moving off the pelvis into areas of the body such as the abdomen that cannot withstand the heavy loading seen in automobile accidents.

18. The Federal Regulations establish minimum performance standards that must be met by the manufacturer.

19. When the "restraint system" as a whole is designed properly and optimized for the specific vehicle and seating position, the "lap belt" is able to serve its function and remain on the pelvis.

20. It is well recognized that defects in the "restraint system", most commonly, but not limited to poor seat design and poor belt geometry, increase the risk of forward excursion where the occupant's hips rotate under ("submarine") the belt and the abdomen and spine sustain the loading. This event is documented in the engineering literature and commonly referred to as "submarining".

21. GM and TAKATA are aware of the severe risk of injury with "submarining" and have incorporated "restraint system" designs in vehicles other then the PONTIAC to reduce the risk to make a car crashworthy.

22. On December, 20th, 2007, MS. THOMAS was a passenger in the PONTIAC sitting in the middle rear seating position. She was properly seated wearing the available lap belt when the car collided with a tree in a front end collision.

23. During the accident sequence, MS. THOMAS "submarined" under the belt, and the belt applied tremendous force to her abdomen and spine. As a result, she sustained permanent injuries to her lumbar, spinal cord and internal organs, resulting in past and future medical expenses, lost wages, past and future pain and suffering, loss of bodily function, permanent impairment of the power to labor and earn money, increased complications and infections, loss of enjoyment of life and the ability to perform everyday functions and activities, and other damages available under the law.

## COUNT I
## STRICT LIABILITY

24. Plaintiff hereby restates and alleges each and every allegation set forth above, as if they were repeated here.

25. Defendants GM and TAKATA are both strictly liable because The PONTIAC was unreasonably dangerous and not crashworthy for foreseeable motion kinematics and potential injury in common collision modes (e.g., frontal impacts).

26. Specifically, the "restraint system" (including, but not limited to, the seat configuration, contour and material composition; the location of the seat belt anchorage points; the buckle stalk; the seat cushion and padding; the reaction ramp and/or seat pan/plate and/or lack thereof; the floor pan; the lap belt pretensioner and/or lack thereof;

the rear seat interior dimensions for the middle rear occupant; the retractor and/or lack of retractor; and the warnings regarding the danger of spinal and abdominal injuries) did not protect middle-rear occupants from the risk of "submarining" and in fact increased the risk of extensive forward excursion.

27. An ordinary, prudent seller, manufacturer, and/or distributor, being fully aware of the risks associated with the "restraint system" would not have placed the PONTIAC in the stream of commerce;

28. The PONTIAC was dangerous to an extent beyond that which would be contemplated by the ordinary user or consumer with the ordinary knowledge common to the community.

29. Reasonable alternative "restraint system" designs were available that would have limited the risk and/or prevented occupant "submarining" in the middle rear seat, which included, but were not limited to, antisubmarine seat protection (reaction ramp and/or seat pan/plate), stiffer padding, alternative belt anchorage points, alternative belt routing, retractor and prentensioners, a should belt restraint, or simply excluding a rear seating position.

30. The "restraint system" did not conform to well recognized and prevailing engineering standards or state of the art technology that was readily available to provide proper belt fit and reduce the risk of "submarining" injuries.

31. The "restraint system" in the PONTIAC did not conform to GM's protocols, TAKATA's protocol or product specifications or instructions for installation.

32. MS. THOMAS was exercising reasonable care and properly using "the restraint system" in its original, unaltered, and unmodified condition on December 20th, 2007 when the car collided with the tree.

33. The defects described directly and proximately caused Plaintiff THOMAS to "submarine" and suffer enhanced injuries including the injuries to her abdomen and spinal cord.

34. Had a reasonable alternative design been implemented, Plaintiff would have suffered far fewer injuries and would not have "submarined" or suffered the catastrophic abdominal, lumbar, and spinal cord injuries.

## COUNT II
## FAILURE TO WARN

35. Plaintiff hereby restates and alleges each and every allegation set forth above, with the same force and effect as if herein repeated and set forth at length.

36. Defendants GM, TAKATA, and John Doe Dealership through testing, observation, incident reports, studies, engineering literature, and general industry awareness had actual knowledge that the "restraint system" in the PONTIAC was defective, increased the risk of "submarining injuries", and was not crashworthy and, therefore, owed a duty to warn the consumer and other foreseeable users of the product.

37. Despite the fact that Defendants GM, TAKATA, and John Doe Dealership knew the PONTIAC was defective, the Defendants each failed to take any steps to notify and warn consumers or the general public of this danger, and in fact concealed this information from the consumer and general public.

38. Had GM, TAKATA or John Doe Dealership warned the general public or placed specific warnings in the vehicle, Plaintiff THOMAS would have been aware of the

danger and would not have ridden as a passenger or suffered the injuries described above on December 20th, 2007.

39. Plaintiff THOMAS's injuries were a direct and proximate result of each Defendant's failure to warn of the danger.

## COUNT III
## NEGLIGENCE

40. Plaintiff incorporates herein by reference the previous paragraphs of this Complaint and further states that:

41. Defendants GM, TAKATA, and John Doe Dealership each owed a duty to MS. THOMAS to exercise ordinary care when designing, manufacturing, constructing, developing standards, assembling, testing, certifying, instructing, marketing, advertising, warning, and otherwise placing the PONTIAC into the stream of commerce.

42. Defendants each negligently and carelessly breached the above-described duty and failed to discover and/or forsee the dangers and increased risk of "submarining" associated with the "restraint system" prior to placing the PONTIAC on the market.

43. As a direct and proximate result of each Defendant's breach, MS. THOMAS sustained the damages described above.

## COUNT IV
## IMPLIED WARRANTY OF MERCHANTABILITY

44. Plaintiff incorporates herein by reference the previous paragraphs of this Complaint and further states that:

45. GM through its advertising and promotional materials, impliedly warranted that the PONTIAC was safe for the use for which it was intended, including the use and safety of middle rear seat.

46. GM breached said implied warranties in that the PONTIAC was unsafe in light of the risk of life-threatening side effects associated with its use, including, but not limited to, submarining.

47. MS. THOMAS relied to her detriment on the implied warranties of GM.

48. As a direct and proximate result of GM's breach of implied warranties, MS. THOMAS suffered and continues to suffer from injuries and damages set forth in this Complaint.

## COUNT V
## COMPENSATORY DAMAGES

49. As a result of the negligence of the Defendants named herein, jointly and/or severally, the Plaintiff has in the past and will in the future suffer permanent physical and mental injuries, been caused to suffer pain and mental anguish, had her power to labor and earn money permanently impaired, and has incurred medical expenses and will so in the future, all to her detriment in the sum of $20,000,000.

## COUNT VI
## PUNITIVE DAMAGES

50. Plaintiff incorporates herein by reference the previous paragraphs of this Complaint and further states that:

51. The conduct of Defendants GM and TAKATA, as set forth herein, was so outrageous and improper as to constitute willful, wanton and reckless disregard for the safety of MS. THOMAS and the users and ultimate consumers of this product. Defendants made conscious decisions not to redesign, test, warn or inform the consuming

public of the dangers of its "restraint system" so as to warrant an award of punitive damages in the sum of $20,000,000.00.

52. The conduct of the Defendants meets the criteria for punitive damages enumerated in KRS 411.184 and KRS 411.186, as well as the common law of Kentucky.

WHEREFORE, Plaintiff prays for judgment against Defendant GM in the amount of Ten Million Dollars ($20,000,000.00) in compensatory damages, and Ten Million Dollars ($10,000,000.00) in punitive damages, plus costs and attorneys' fees, and for such other and further damages and relief as this Court may deem appropriate

### DEMAND FOR JURY TRIAL

Plaintiff, by her undersigned counsel, hereby requests a jury trial on all counts in this action.

This December 16, 2008.

Mike Breen
BREEN & MORGAN ATTORNEYS AT LAW
870 Fairview Ave., Suite 5
P O Box 3310
Bowling Green, KY 42102-3310
Telephone (270) 782-3030

and

Michael Lyon
(*pro hac vice* application pending)
312 Walnut, 29th Floor
Cincinnati, OH 45202

Joseph Lyon
(*pro hac vice* application pending)
THE LYON FIRM
22 West 9th Street
Cincinnati, OH 45202